UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTY VELA,

       Plaintiff,                                                Hon. Robert J. Jonker

v.                                                                   Case No. 1:14-CV-29

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 39 years of age on his alleged disability onset date. (Tr. 126). He successfully completed high school and previously worked as a driver sales representative, warehouse supervisor, store laborer, and tractor trailer/moving van driver helper. (Tr. 26). Plaintiff applied for benefits on May 23, 2011, alleging that he had been disabled since May 11, 2010, due to two herniated discs. (Tr. 126-37, 152). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 53-125). On May 7, 2012, Plaintiff appeared before ALJ Thomas English with testimony being offered by Plaintiff and a vocational expert. (Tr. 31-52). In a written decision dated July 24, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 18-27). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 8-13). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On June 21, 2010, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed a "large central and left paracentral disc extrusion [at] L5-S1 with a focal extruded component." (Tr. 215). On August 24, 2010, Plaintiff participated in an electrodiagnostic examination the results of which were "consistent with a left S1 radiculopathy with acute denervation present." (Tr. 233-34).

On October 7, 2010, Plaintiff was examined by Dr. Naman Salibi. (Tr. 200-03). Plaintiff reported that he was experiencing "low back pain with left leg pain." (Tr. 200). Straight

leg raising was positive on the left, but the results of a physical examination were otherwise unremarkable. (Tr. 201-02). Plaintiff reported that he "wants to try conservative management." (Tr. 203). The doctor recommended to Plaintiff that he participate in physical therapy. (Tr. 203).

On November 18, 2010, Plaintiff was examined by Dr. Salibi. (Tr. 204). Plaintiff reported that he was experiencing "left-sided low back pain" and "left lower extremity pain, which extends down to the posterior calf." (Tr. 204). Straight leg raising was negative and Plaintiff exhibited 5/5 muscle strength. (Tr. 204). The doctor again recommended that Plaintiff participate in physical therapy. (Tr. 204).

Physical therapy treatment notes, dated June 10, 2011, indicated that Plaintiff's "rehabilitation potential is good" provided he participates in physical therapy as well as a "home exercise program." (Tr. 227). Treatment notes dated August 19, 2011, indicate that Plaintiff was not a "surgical candidate" and should instead continue participating in a home exercise program. (Tr. 274). Plaintiff was discharged from physical therapy on September 14, 2011. (Tr. 236). Plaintiff reported that, at its worst, his pain rated 5/10. (Tr. 236). With respect to Plaintiff's functional capability, the therapist reported the following:

> Stand Comfortably (10 min): mild limited
> Sit Comfortably (15 min): unrestricted/fully able
> Bend Forward at Waist: mildly limited
> Walk 1/2 Mile, No Limp/Rest: mildly limited

(Tr. 236). The therapist noted that Plaintiff was "independent in [his] home exercise program" and that his "condition is improving." (Tr. 236).

On October 24, 2011 and October 25, 2011, Plaintiff participated in a functional capacity evaluation conducted by Occupational Therapist Thomas Lilley. (Tr. 259-72). The therapist reported that Plaintiff can "occasionally" lift 30 pounds, push 56 pounds, pull 31 pounds,

4

and carry 25 pounds. (Tr. 265-68). The therapist reported that Plaintiff can "occasionally" engage in forward bending activities from a sitting or standing position and can frequently engage in rotation activities from a sitting or standing position. (Tr. 270). The therapist reported that Plaintiff can frequently sit, occasionally stand, and frequently walk. (Tr. 271-72). With respect to Plaintiff's effort throughout the testing, the therapist observed the following:

> The client gave maximum, consistent effort for most test items but did limit self when lifting on day 2 due to increased lower back pain. Thus his lifting capacities did vary significantly from day 1 to day 2 of the FCE due to self limited pain behaviors. However, his carrying capacities did appear similar from day 1 to day 2 of the FCE. He also did not appear to give maximum muscle recruitment when performing grip strength testing. His left grip strength test results did not form a bell shaped curve indicating that maximum voluntary effort may not have been given. Despite these inconsistencies in testing, most of the client's capacities do appear to reflect consistent effort and correlate with his diagnosis of herniated lumbar disc.

(Tr. 259).

At the administrative hearing, Plaintiff testified that he was disabled "because of the pain [he] experience[s] on a day-to-day basis." (Tr. 35). Plaintiff described his pain was "constant." (Tr. 40). When asked what he does during the day, Plaintiff responded, "not much." (Tr. 40-41). Plaintiff testified that he is forced to lay down much of the day during which time he alternatively applies ice and heat to his back. (Tr. 44). Plaintiff testified that his pain was "unbearable" when he is not laying down. (Tr. 44). Plaintiff acknowledged, however, that his medications "tend to. . .ease the pain." (Tr. 40). Plaintiff reported that he has physical custody of his children, aged 11 and 6, every other week during which time he is their "primary caretaker." (Tr. 41). Plaintiff also reported that he has a lake cottage at which he goes fishing with his sons. (Tr. 42).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) degenerative disc disease of the lumbar spine, and (2) herniated nucleus pulposus at L5-S1, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 20-21). The ALJ next determined that Plaintiff retained the capacity to perform light work[2] subject to the following limitations: (1) he requires the option to change positions between sitting and standing for up to five minutes as frequently as every twenty minutes, while remaining on task and within arm's reach of his work tasks; (2) he can occasionally bend, twist, turn, and stoop; (3) he cannot crawl; (4) he cannot climb ladders, ropes, or scaffolds; and (5) he is limited to unskilled work. (Tr. 21).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ submitted interrogatories to a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 4,900 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 49-50). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.        The ALJ Properly Discounted Plaintiff's Subjective Allegations**

Plaintiff testified at the administrative hearing that he experienced "constant" pain which rendered him unable to work. Plaintiff testified that as a result of his pain he must spend most of each day laying down lest his pain become "unbearable." Plaintiff argues that he is entitled to relief because the ALJ improperly rejected his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20

C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such

evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

In assessing Plaintiff's credibility, the ALJ discussed at length the evidence of record. (Tr. 22-26). Specifically, the ALJ concluded that the medical evidence did not support Plaintiff's allegations of extreme pain and limitation. The ALJ concluded that Plaintiff's "treatment history is inconsistent with [his] allegations as to the severity of his impairment." The ALJ further concluded that Plaintiff's reported activities were likewise inconsistent with his allegations of extreme pain and limitation. As the discussion of the evidence above reveals, the ALJ's determination in this regard is supported by substantial evidence.

**II.        The ALJ Properly Relied on the Testimony of a Vocational Expert**

Plaintiff also argues that the ALJ's finding at Step V of the sequential evaluation process is "unsupported by the substantial weight of the evidence." While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 4,900 such

jobs in the state of Michigan. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 12, 2015        /s/ Ellen S. Carmody
                               ELLEN S. CARMODY
                               United States Magistrate Judge